**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JAMES A. ELLIS, et al.,

       Plaintiffs,

v.            CIVIL ACTION NO.   2:14-mc-00146

ARROWOOD INDEMNITY COMPANY,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Arrowood Indemnity Company's ("Arrowood") Motion for Protective Order [Docket 1]. Arrowood moves to quash portions of subpoenas that relate to a third-party bad faith action pending in the United States District Court for the Eastern District of Kentucky. Arrowood argues that the subpoenas request production of documents that are protected by the attorney-client or work product privilege. For the reasons discussed below, the motion is **DENIED**.

**I.  Background**

On May 12, 1998, James A. Ellis and James A. Ellis & Associates Architects PSC (collectively "the Ellis Parties") filed a legal malpractice action against Bowles Rice McDavid Graff & Love, PLLC ("Bowles Rice") and Getty, Keyser & Mayo, LLP ("Getty Keyser") in the Pike County, Kentucky Circuit Court. (Compl. [R. 1-1[1]] ¶ 2). At the time, Bowles Rice was

---

[1] Arrowood did not file exhibits that would provide this court with the context of the action pending before the Eastern District of Kentucky, such as the complaint. This docket entry is taken from the docket pending before the Eastern District of Kentucky. Docket entries from the Eastern District of Kentucky will be identified by "R." rather than "Docket."

insured by Design Professionals Insurance Company ("DPIC") and Getty Keyser was insured by Security Insurance Company of Hartford ("Security"). (Second Am. Answer [Docket R. 28], at 9, ¶ 8). On December 31, 2002, DPIC merged with Security, and on September 27, 2007, Security merged with Arrowood. (*Id.* at 9, ¶¶ 9-10). Therefore, Arrowood is the successor-in-interest to DPIC and Security. (*See id.*).

Arrowood's predecessor-in-interest retained Mark Swartz to represent Bowles Rice in the legal malpractice action. (*See* Mem. in Supp. of Arrowood's Mot. for Protective Order ("Mem. in Supp.") [Docket 1-1], at 2, 6). Bernard Pafunda was retained to represent Getty Keyser. (*See id.* at 6). The legal malpractice action was bifurcated—the first phase was damages and the second phase was liability. After the damages phase, the jury returned a verdict in favor of the Ellis Parties for $3,387,050.65. (Compl. [R. 1-1] ¶ 16). Three days into the liability phase, the parties settled, and on May 26, 2005, the parties entered into a settlement agreement. (*Id.* ¶¶ 17-18). On June 9, 2005, Arrowood's predecessor-in-interest paid the settlement amount of $3,965,000. (*Id.* ¶ 19). The plaintiff received $3,165,000 directly and the remaining $800,000 was placed in escrow. (*Id.*).

On March 23, 2006, the Pike County Circuit Court vacated the jury verdict, the dismissal order, and the 2005 settlement because of an undisclosed relationship between the trial judge and the Ellis Parties' trial consultant. (*See* Pike County Circuit Court Order [R. 67-8]). The Ellis Parties and the law firm defendants attempted to resettle, but the settlement was delayed due to Arrowood's alleged bad faith conduct. (Compl. [R. 1-1] ¶¶ 23-29).

On November 5, 2012, the Ellis Parties filed suit against Arrowood in Kentucky state court, alleging third-party bad faith and deceptive practices, in violation of the Kentucky Unfair Claims Settlement Act ("USCA"). (*See generally id.*). Arrowood then removed the case to the

2

Eastern District of Kentucky. On August 4, 2014, the Ellis Parties served and noticed a subpoena duces tecum and deposition on Gerard Stowers, a partner at Bowles Rice and the firm's risk manager and general counsel, and Mark Swartz, defense counsel for Bowles Rice in the underlying action. (*See* Stowers Subpoena [Docket 1-3]; Swartz Subpoena [Docket 1-5]). Both the subpoenas command Mr. Swartz and Mr. Stowers to appear in Charleston, West Virginia for the deposition. (*Id.*). In addition, the Swartz Subpoena requests production of the following documents:

> For the legal malpractice case involving James A. Ellis, Ellis & Associates Architects, any and all documents in your care, custody and control regarding attempts to settle the legal malpractice action for which you were defense counsel, including communications between you and the insurance company, you and Bernard Pafunda, you and your client or you and the insurance company (including any demand or instructions to settle the suit); any evaluations of liability or damages; and your current Curriculum Vitae or resume.

(Swartz Subpoena [Docket 1-5]).

> The Stowers Subpoena requests the following documents:

> For the legal malpractice case involving James A. Ellis, Ellis & Associates Architects, All emails, handwritten notes, and memoranda relating to the underlying matter, James A. Ellis, et al. v. Bowles Rice, McDavid, Graff & Love PLLC, et al., C.A. No. 98-CI-00645, not previously produced; any evaluations of liability or damages; your current Curriculum Vitae or resume[.]

(Stowers Subpoena [Docket 1-3]). Both the subpoenas request compliance on September 5, 2014.

(*See* Stowers Subpoena [Docket 1-3]; Swartz Subpoena [Docket 1-5]).

On August 21, 2014, pursuant to Federal Rule of Civil Procedure 45(d)(3)(A), Arrowood filed the instant action to quash portions of the subpoenas issued to Mr. Swartz and Mr. Stowers. Arrowood argues that the subpoenas seek documents covered by the attorney-client and/or work product privilege. Because compliance was due before this motion would become ripe, I ordered

3

the Ellis Parties to respond to Arrowood's motion on September 1, 2014. The Ellis Parties have not responded.

## II.     **Legal Standard**

Federal Rule of Civil Procedure 45 was recently amended in 2013. Prior to the 2013 amendments, Rule 45 required that subpoenas issue from the district where compliance was required. *See* Fed. R. Civ. P. 45(a)(2) (2011) (stating that subpoenas "must issue as follows . . . for attendance at a deposition, from the court for the district where the deposition is to be taken; . . . for production or inspection, if separate from a subpoena commanding a person's attendance, from the court for the district where the production or inspection is to be made"). The issuing court also retained the authority to modify or quash the subpoena. *See* Fed. R. Civ. P. 45(c)(3) (2011) (stating that the "issuing court must quash or modify" subpoenas).

After the 2013 amendments, subpoenas must be issued from the court where the action is pending. Fed. R. Civ. P. 45(a)(2). However, the authority to quash or modify the subpoena remains with the court in the district where compliance is required. Fed. R. Civ. P. 45(d)(3)(A). In addition, under the amended rule, if "the court where compliance is required did not issue the subpoena, [that court] may transfer a motion under [Rule 45] to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Under Rule 45(d)(3)(A), a court *must* quash or modify a subpoena that:

> **(i)**     fails to allow a reasonable time to comply;
>
> **(ii)**    requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> **(iii)**   *requires disclosure of privileged or other protected matter, if no exception or waiver applies; or*

    **(iv)**    subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv) (emphasis added).

## III. Discussion

### A. Jurisdiction

The first issue I must address is whether I have jurisdiction over Arrowood's motion to quash. Under post-2013 Rule 45, the proper court to resolve a motion to quash is the court in the district where compliance is required. Most courts look to the subpoena to determine where compliance is required. *See, e.g.*, *U.S. Risk Ins. Grp., Inc. v. U.S. Risk Mgmt., LLC*, No. 3:11-CV-2843-M-BN, 2014 WL 4055372, at *1 (N.D. Tex. Aug. 15, 2014) (finding that subpoena by its plain terms commanded compliance in Dallas, Texas because subpoena required production of documents in that city).[2] Here, the subpoenas require Mr. Stowers and Mr. Swartz to appear and produce the required documents in Charleston, West Virginia. Because Charleston is located in the Southern District of West Virginia, I have authority to resolve Arrowood's motion.[3]

---

[2] *See also Wultz v. Bank of China, Ltd*, 88 Fed. R. Serv. 3d 1304 (D.D.C. 2014) (finding that compliance was required in District of Columbia, where the subpoena was served and where the subpoena commanded attendance); *Semex Alliance v. Elite Dairy Genomics, LLC*, No. 3:14-CV-87, 2014 WL 1576917, at *1 (S.D. Ohio Apr. 18, 2014) (finding that the court lacked jurisdiction because the subpoena commanded person to appear in Chicago, Illinois). *But see Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-CV-0708-RFB-NJK, 2014 WL 4079555, at *4 (D. Nev. Aug. 15, 2014) ("Rule 45 makes clear that the place of compliance is tethered to the location of the subpoenaed person. . . . The text of the Rule does not provide for an alternative basis for the Court to find that the place of compliance is not tethered to the subpoenaed person's location, but rather could be found to be some other district where the subpoenaed person contends the responsive documents are located or where the subpoenaed party with possession of the documents is required to comply.").

[3] Rule 45(f) permits the court to transfer this motion if the subpoenaed persons consent or if I find exceptional circumstances exist. Fed. R. Civ. P. 45(f). One of the subpoenaed persons, Mr. Stowers, has refused to consent to a transfer. (*See* Stowers Objections [Docket 3]). Mr. Swartz has not addressed this issue. Moreover, given that the subpoenas require compliance on September 5, 2014, a transfer will likely prevent a ruling on this matter before the date of compliance. Therefore, I find that the circumstances do not warrant transferring this motion to the issuing court, the Eastern District of Kentucky.

### B.  Attorney-Client Privilege

Under Federal Rule of Evidence 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. In cases based on diversity, federal courts apply federal law to resolve work-product challenges and state law to attorney-client challenges. *Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 329 n.2 (N.D. W. Va. 2006) ("In a diversity case federal courts apply federal law to resolve work-product privilege claims and state law to resolve attorney-client privilege claims."). Therefore, Kentucky law governs the issue of attorney-client privilege.[4]

In Kentucky, the attorney-client privilege is governed by Kentucky Rule of Evidence 503. *Collins v. Braden*, 384 S.W.3d 154, 161 (Ky. 2012). The privilege seeks to "facilitate the performance of effective legal services, and seeks to accomplish that objective by encouraging full disclosure of information by the client to the lawyer[.]" Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 5.05[1][a] (4th ed. 2014); *see also The St. Luke Hospitals, Inc. v. Kopowski*, 160 S.W.3d 771, 775 (Ky. 2005) ("The protection from disclosure of privileged communications between an attorney and client is one of the foundation principles of Anglo–American jurisprudence. Where the privilege applies its breach undermines confidence in the judicial system and harms the administration of justice.").

---

[4] Rule 501 does not address horizontal choice of law issues—that is, which state's law applies to the privilege issue. The Fourth Circuit has yet to provide a framework in determining this issue. *See Hatfill v. New York Times Co.*, 459 F. Supp. 2d 462, 465 (E.D. Va. 2006). Courts have taken three different approaches: (1) assume that the law that applies the rule of the decision also provides the rule for privileges, (2) apply the privilege rules of the state in which the court sits, or (3) apply the conflict law doctrines of the state in which the court sits. 23 Charles Alan Wright & Kenneth W. Graham Jr., *Federal Practice and Procedure* § 5435 (1980). The Ellis Parties have not responded to Arrowood's motion, but in prior discovery disputes in the Eastern District of Kentucky, the Ellis Parties have not challenged the application of Kentucky privilege law. (*See* Pls.' Rep. in Opp'n to Def.'s Mot. for Protective Order [R. 67]; Pls.' Resp. Br. to Reply Mem. in Supp. of Mot. for Protective Order [R. 105]). *See Pennsylvania Nat. Mut. Cas. Ins. Co. v. Triangle Paving, Inc.*, 973 F. Supp. 560, 562 (E.D.N.C. 1996), *aff'd*, 121 F.3d 699 (4th Cir. 1997) (applying North Carolina law to interpret insurance contract where parties conceded that North Carolina law applied).

The privilege permits a client "to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client[.]" Ky. R. Evid. 503(b). The confidential communication must be made between two of the four following parties: "the client, the client's representatives, the lawyer, or the lawyer's representatives." *Haney v. Yates*, 40 S.W.3d 352, 354 (Ky. 2000). In sum, the privilege "requires (1) a relationship of attorney and client, (2) the rendition of legal services for the client, and (3) the making of a confidential communication relating to the subject matter of those services." Larson, *supra*, § 5.05[1][b]. Attorney-client communications are absolutely protected, unless one of the exceptions codified in Kentucky Rule of Evidence 503(d) applies. *See The St. Luke Hospitals*,160 S.W.3d at 777. The individual resisting discovery bears the burden of proving the privilege applies. *Haney*, 40 S.W.3d at 355.

This privilege requires special analysis in the insurance context due to the variety of relationships that may arise. *See* David P. Rossmiller, *New Appleman Insurance Law Practice Guide* § 19.02 (2014). In the insurance context, the insurer obtains counsel for the insured. However, the insured may subsequently file a first-party bad faith action against the insurer. This is an action where the insured sues the insurer for failing to handle his or her claim in good faith. Likewise, the victim of the insured's tortious conduct may sue the insurer for failing to settle the claim in good faith, which is known as a third-party bad faith action. In both scenarios, an insurer might seek to prevent the disclosure of confidential communications by asserting the attorney-client privilege. The question in the third-party bad faith context is whether the attorney-client privilege applies to confidential communications between the insurer, insured, and the attorney retained by the insurer.

7

This is an undeveloped area of law in Kentucky. However, the Eastern District of Kentucky recently answered this question in the affirmative. In *Lee v. Medical Protective Co.*, the court ruled that an insured and insurer who obtains an attorney for the insured are both clients of that attorney.[5] 858 F. Supp. 2d 803, 805-06 (E.D. Ky. 2012). The court based its ruling on *Asbury v. Beerbower*, 589 S.W.2d 215 (Ky. 1979), where the Kentucky Supreme Court held that statements made to an adjuster are privileged if they are ultimately to be given to an attorney that will be retained by the insurer. *Id.* at 805. The court reasoned that "[t]he implication is that the insurance company is the primary client." *Id.* Because the insurer and the insured are joint clients of the attorney, the rules of joint representation apply. *Id.* at 806. Therefore, as between the insurer and insured, there is no attorney-client privilege for matters of common interest. *Id.* However, the attorney client privilege would apply to third parties. *Id.* Because there is no binding or persuasive authority to the contrary, I will hold that with respect to third parties, the attorney-client privilege applies to confidential communications between the insurer, counsel retained by the insurer, and the insured.

Here, the Stowers Subpoena requires Mr. Stowers to produce all emails, handwritten notes, and memoranda related to the underlying legal malpractice action. (Stowers Subpoena [Docket 1-3]). On August 28, 2014, Mr. Stowers filed an objection to the requested production and filed a

---

[5] Other courts have also found that the insured and insurer are joint clients of the attorney retained by the insurer, and thus the attorney-client privilege applies to that tripartite relationship. *See Progressive Exp. Ins. Co. v. Scoma*, 975 So. 2d 461, 467 (Fla. Dist. Ct. App. 2007) ("On the other hand, the confidential communications between the insured, the insurer, and any counsel representing them regarding the matter of common interest are protected from discovery by third parties."); *State ex rel. U.S. Fid. & Guar. Co. v. Montana Second Judicial Dist. Court*, 783 P.2d 911, 913-15 (Mont. 1989) (holding that communications between insurer and attorney hired by insured to defend insured was within the attorney-client relationship because attorney represents the interests of both the insured and insurer); *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 617 S.E.2d 40, 46-47 (N.C. App. 2005) (finding that the joint client doctrine applies to communications between the insurer, insured, and counsel). *But see State ex rel. Allstate Ins. Co. v Gaughan*, 508 S.E.2d 75, 89 (W. Va. 1998) (rejecting majority view that insured and insurer are joint clients of trial counsel obtained by insurer, but nonetheless holding that in "a third-party bad faith action where an insured has signed a release of his/her claim file to a third-party litigation, an insurer may raise a *quasi attorney-client privilege* to communications in the insured's claim file.").

8

privilege log. (*See* Stowers Objections [Docket 3]; Stowers Privilege Log [Docket 3-2]). The privilege log identifies two files and an archive of emails as privileged. (Stowers Privilege Log [Docket 3-2]). The first file contains pleadings, communications, letters, and other information received from and sent to Bowles Rice, Arrowood's predecessor-in-interest, and defense counsel, Mr. Pafunda and Mr. Swartz. (*Id.*). The second file contains similar information, but is chronologically dated after the materials in the first file. (*Id.*). Finally, Mr. Stowers asserts that emails from and to defense counsel, members of Bowles Rice, and its insurance carrier are privileged. (*Id.*). Mr. Stowers claims that these emails were sent or received by him in his capacity as general counsel for Bowles Rice. (Stowers Objections [Docket 3]).

As a general matter, not all confidential communications between an attorney and his client are covered by the attorney-client privilege. For example, the attorney-client privilege does not apply to business advice. *See* Ky. R. Evid. 503(b). The attorney-client privilege only applies to confidential communications made to facilitate the rendering of legal services. *Id.* The current privilege log and Arrowood's description of the privileged documents is insufficient for this court to render a ruling. In particular, with respect to the emails, the privilege log only identifies who sent the email, but does not describe the basic subject matter of the email. Instead, Arrowood has made only conclusory assertions that these documents are privileged, which courts generally find insufficient to meet the burden of establishing privilege. *See Stidham v. Clark*, 74 S.W.3d 719, 725 (Ky. 2002) (holding in context of psychotherapist-privilege that "[n]either a blanket assertion of the privilege nor a bare showing that the recipient of the communication is a psychotherapist would be sufficient"); *see also* 2 Paul R. Rice, *Attorney-Client Privilege in the U.S.* § 11:11 (2013) ("Although an attorney's word may be 'taken on its face,' a privilege claim is not self-executing. It

requires more proof than a conclusion by the party asserting the claim (or his attorney) that it is justified.") (collecting cases). Without further information as to the general purpose of these communications, I cannot determine if the attorney-client privilege applies.

The request to quash the Swartz Subpoena suffers from the same deficiencies. The Swartz Subpoena requires Mr. Swartz to produce his file concerning attempts to settle the underlying action and his communications with Arrowood, Bernard Pafunda, counsel for Getty Keyser, and his client Bowles Rice. While these communications might be privileged, Arrowood has not filed a privilege log and has not provided a factual basis for this court to determine whether the attorney-client privilege applies. Accordingly, as Arrowood has failed to meet its burden in establishing the above-described documents are covered by attorney-client privilege, I **DENY** Arrowood's motion to quash.

### C. Work Product Privilege

Federal law governs work product issues. *See Nicholas*, 235 F.R.D. at 329 n.2. The work product doctrine was first recognized by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947). The doctrine was later incorporated into Federal Rule of Civil Procedure 26(b)(3)(A). This rule provides:

> **(A)** *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> **(i)** they are otherwise discoverable under Rule 26(b)(1); and
>
> **(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A).

The level of work product protection varies depending on the type of work product involved. *See In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 348 (4th Cir. 1994). There are two types of work product: fact work product and opinion work product. *Id.* "Opinion work product includes the mental impressions, conclusions, opinions, and legal theories of a party's attorney and is scrupulously shielded from disclosure." *Bowling v. Appalachian Elec. Supply, Inc.*, No. 3:13-CV-27347, 2014 WL 1404572, at *2 (S.D. W. Va. Apr. 10, 2014) (Eifert, M.J.) (citing *In re Grand Jury Proceedings*, 33 F.3d at 348)). "Fact work product encompasses such things as statements, interviews, chronologies, and correspondence[.]" *Id.* Fact work product may be discovered "upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings*, 33 F.3d at 348; *see also* Fed. R. Civ. P. 26(b)(3)(i)-(ii).

The party seeking work product protection has the burden of showing that it applies. *See Ennis v. Anderson Trucking Serv., Inc.,* 141 F.R.D. 258, 259 (E.D.N.C. 1991); *see also Malibu Media, LLC v. John Does 1-15*, No. CIV.A. 12-2077, 2012 WL 3089383, at *5 (E.D. Pa. July 30, 2012) ("The party seeking to quash the subpoena bears the burden of demonstrating that the requirements of Rule 45 are satisfied."); *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007) ("The burden of persuasion in a motion to quash a subpoena . . . is borne by the movant." (quotation and citations omitted)); Wright & Miller, *supra*, § 2459 ("As numerous cases have held, the movant has the burden of persuasion on a motion to quash a subpoena."). "In meeting this burden, such party may not rely on conclusory allegations or mere statements in briefs." *Suggs v. Whitaker*, 152 F.R.D. 501, 505 (M.D.N.C. 1993). The party meets this burden by

providing "specific demonstration of facts supporting the requested protection[.]" *Id.* Preferably, this demonstration is made "through affidavits from knowledgeable persons." *Id.* If a party fails to meet this burden, the party's motion will be denied.

Here, in his objections, Mr. Stowers states that:

> At all times relevant to the *Ellis v. Bowles Rice* proceeding filed in 1998, Stowers acted as general counsel to Bowles Rice and, therefore, his mental impressions, work product and his conversations with counsel retained by him and on behalf of the firm, are privileged and not subject to production and/or inquiry.

(Stowers Objections [Docket 3]). In its briefing, Arrowood argues that the Ellis Parties request for documents concerning "evaluations of liability or damages" improperly seeks documents that contain opinion work product. Arrowood claims that "evaluations of liability or damages, by their nature, are materials that reflect the attorney's mental impressions, opinions, conclusions, judgments, or legal theories." (Mem. in Supp. [Docket 1-1], at 8 (quotations omitted)).

By their nature, the Ellis Parties' request may touch upon documents covered by the work product doctrine. However, the burden is on Arrowood to demonstrate the applicability of the doctrine. Arrowood's blanket assertions in its memoranda are insufficient to meet this burden. The burden is on Arrowood to provide sufficient information so that I may make an informed decision concerning the application of the work product doctrine. I may not grant blanket protection of these documents based on the scant information currently in the record. Accordingly, Arrowood's motion to quash with respect to this request is **DENIED**.

## IV.    Conclusion

For the reasons discussed above, Arrowood's Motion for Protective Order [Docket 1] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 2, 2014

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

13